# STATE OF MICHIGAN

# COURT OF APPEALS

BUREAU OF HEALTH CARE SERVICES,

      Petitioner-Appellee,

v

RICHARD MICHAEL SCHWARCZ, DDS,

      Respondent-Appellant.

UNPUBLISHED
September 8, 2015

No. 322035
Board of Dentistry
LC No. 11-122591

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Respondent, Richard Michael Schwarcz, appeals as of right the decision of the Board of Dentistry to place him on probation for up to one year and fine him $3,000 for violating MCL 333.16221(a) (requiring the exercise of due care), MCL 333.16221(b)(*i*) (incompetence), MCL 333.11621(h) (violating rules), MCL 333.16213 (requiring licensees to keep and maintain patient records), and Mich Admin Code, R 338.11120 (specific requirements for dental records). We affirm.

## I. BACKGROUND FACTS

At the hearing in this matter, the patient testified that her family dentist referred her to Dr. Schwarcz, who performed a root canal on tooth #19 on August 2, 2007. Part of a file broke during the procedure, and it was left in the root of her tooth. The patient alleged that as a result of a broken file and Dr. Schwarcz's failure to inform her of it, she suffered infections and other serious complications.

According to Dr. Schwarcz, the fluted files used to clean and shape the root of the tooth during a root canal occasionally break during the procedure. Normally, the broken file simply becomes part of the root canal seal. Dr. Schwarcz testified that the standard of care requires him to inform a patient that there was a file fragment remaining in his or her tooth.

When asked whether the Dr. Schwarcz told her that a piece of file was left in her tooth, the patient responded, "No." When asked whether anyone from Dr. Schwarcz's office told her about the file in her tooth, the patient responded, "Never, no." According to the patient, Dr. Schwarcz's assistant gave her normal post-operative care instructions, such as to call if she had any problems. She did not recall that Dr. Schwarcz talked to her before or after the procedure.

-1-

In contrast, Dr. Schwarcz testified that there was "[n]o doubt" that he informed the patient of the file fragment. According to Dr. Schwarcz, he did not remember his specific conversation with the patient but he reviews the post-operative x-ray with each patient and if there is a file fragment, he instructs them to look for sensitivity, bleeding, and pain. Andrea Kingman, Dr. Schwarcz's dental hygienist, also testified that she did not remember any specific conversation with the patient, but that it was Dr. Schwarcz's habit to discuss the x-ray with the patient, inform them about any file fragment, and provide instructions to monitor it.

According to the patient, she repeatedly told Dr. Schwarcz that she suffered from tooth pain. After a few appointments with no improvement, she stopped seeing Dr. Schwarcz. When the patient returned to her family dentist, the family dentist took an x-ray but did not tell her that anything was wrong with her root canal. She did not find out about the separated file until about a year later, when she had an emergency root canal at the office of Dr. Dominick Shoha.

Dr. Shoha testified that the patient's family dentist referred her because of a problem with tooth #20. According to Dr. Shoha, while he was working on tooth #20, he mentioned that the patient had a separated file in tooth #19. He testified that "[s]he seemed surprised, but I don't know." Dr. Shoha clarified that he did not recall the entire conversation, but he did recall that her reaction was surprise because she asked an unusual question. A file fragment of the size that he removed from her mouth could cause pain and infection. Dr. Shoha eventually extracted tooth #19 after additional treatments did not relieve the patient of her pain and recurrent infections.

The patient filed a licensing complaint with the Board of Dentistry and, after an investigation, Dr. Michael S. Leonard opined that Dr. Schwarcz practiced below the minimum standard of care because he insufficiently documented the procedure, complications, and discussions with the patient. On January 11, 2013, the Bureau of Health Care Services (the Bureau) filed an administrative complaint. As well as the testimony regarding whether Dr. Schwarcz informed the patient about the file fragment, expert testimony concerned whether Dr. Schwarcz adequately documented the complication and his conversations about it with the patient.

Following the proceedings, a magistrate issued a proposal for decision. In the proposed decision, the magistrate found:

> Dr. Schwarcz determined that the separated endodontic file could not be safely retrieved without creating the risk of damage. Dr. Schwarcz and his dental assistant Ms. Kingman both testified that Dr. Schwarcz explained that the file had separated; that this was not an uncommon occurrence; that it was not cause for concern; and that the prognosis was good.

The magistrate also found that Dr. Schwarcz subsequently treated the patient's infection, but the patient eventually cancelled her appointments and did not return to Dr. Schwarcz's office. The magistrate concluded that Dr. Schwarcz's root canal and subsequent treatment of the patient complied with the dental standards of care. It also found that the standard of care required Dr. Schwarcz to inform the patient about the separated file, and it found that he did so.

The Bureau filed exceptions to the magistrate's proposed decision. On May 13, 2014, the Michigan Board of Dentistry's Disciplinary Subcommittee (the Disciplinary Subcommittee) considered the matter. The Disciplinary Subcommittee largely adopted the magistrate's findings of fact, but it rejected the finding that Dr. Schwarcz informed the patient about the separated file. Instead, the Disciplinary Subcommittee found that Dr. Schwarcz did not inform the patient about the file tip, and the patient did not learn about it until she visited Dr. Shoha. It also found that the patient's records did not indicate that Dr. Schwarcz informed her about the complication, and Dr. Schwarcz did not document that the file tip had broken off during the root canal procedure. Finally, it found that Dr. Schwarcz did not document his conversations with the patient about the broken file. It concluded that Dr. Schwarcz violated sections of the public health code, fined him $3,000, and ordered him placed on probation.

## II. STANDARDS OF REVIEW

When reviewing an agency's decision, a court's review is limited to determining whether the agency's action was authorized by law and whether the agency's findings of fact "are supported by competent, material, and substantial evidence on the whole record." *Boyd v Civil Service Comm*, 220 Mich App 226, 232; 559 NW2d 342 (1996) (quotation marks and citation omitted); Const 1963, art 6, § 28. Substantial evidence supports an agency's finding if a reasonable person would accept the evidence as sufficient to reach the conclusion. *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994). Substantial evidence may be substantially less than a preponderance of the evidence. *Id*.

This Court gives deference to agency findings of fact, particularly when they are based on credibility determinations. See *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). It is not the function of a reviewing court to assess witness credibility or resolve conflicting evidence. *Id*. This Court may not set aside factual findings merely because the record could have supported different findings. *Id*. at 373. Circumstantial evidence may support an agency's decision. See *Mich Ed Ass'n Political Action Comm v Secretary of State*, 241 Mich App 432, 446; 616 NW2d 234 (2000) (concluding that the circuit court erred by not considering circumstantial evidence).

## III. BROKEN FILE TIP

Dr. Schwarcz contends that insufficient evidence supported the Bureau's determination that he did not inform the patient about the separated file. We disagree.

In this case, the Disciplinary Subcommittee's decision rested on its determination of the patient's credibility and on the corroborating circumstantial evidence. The patient consistently testified that Dr. Schwarcz did not inform her that a file fragment was left in her tooth. According to the patient, Dr. Schwarcz's assistant gave her normal post-operative instructions, such as to call if she had any problems. Dr. Schwarcz did not speak with her after the procedure. She did not discover the file fragment until she visited Dr. Shoha's office in 2009. Dr. Shoha testified that when he informed the patient of the separated file, "She seemed surprised, but I don't know." Dr. Shoha elaborated that he did not recall the entire conversation, but he specifically recalled that the patient was surprised because she asked an unusual question.

In contrast, Dr. Schwarcz testified that he told the patient about the file tip. He did not recall the specific discussion, but it was his habit to inform patients about separated files while discussing the post-operative x-ray. Kingman also testified that it was Dr. Schwarcz's habit to inform patients about separated files, but Kingman did not recall Dr. Schwarcz's specific conversation with the patient.

Dr. Schwarcz is correct that the patient's memory was notably incorrect in some aspects. For instance, she did not remember that Dr. Schwarcz took a post-operative x-ray, even though Dr. Schwarcz did take a post-operative x-ray. However, the Disciplinary Subcommittee was in a better position to weigh these facts than this Court. See *Dep't of Community Health*, 274 Mich App at 372. It found that the patient was a credible witness. We will not overturn that determination or reweigh the evidence in Dr. Schwarcz's favor.

We conclude that substantial evidence supported the Disciplinary Subcommittee's finding that Dr. Schwarcz did not tell the patient about the separated file. The patient's testimony and Dr. Shoha's testimony both supported its finding. While the Disciplinary Subcommittee also could have found that Dr. Schwarcz did inform the patient about the file tip, this Court may not set aside factual findings merely because the record could have supported different findings. See *id*. at 373. A reasonable person would accept the testimonies as sufficient to support a finding that Dr. Schwarcz did not inform the patient about the broken file.

## IV. DOCUMENTATION

Dr. Schwarcz contends that (1) he did document the separated file by taking an x-ray, and (2) a dentist is not required to document conversations with the patient about complications in the patient's file. We disagree.

MCL 333.16221(a) provides that the disciplinary subcommittee has the power to proceed if it finds "a violation of general duty, consisting of negligence or failure to exercise due care . . . ." The dental standard of care is the

> duty to use that degree of care and skill which is expected of a reasonably competent practitioner of the same class, acting under the same or similar circumstances, having in mind (a) the state of the art for the particular medical situation, (b) whether a specialist should reasonably have been consulted and (c) such local factors as might be pertinent. [*Birmingham v Vance*, 204 Mich App 418, 423; 516 NW2d 95 (1994) (quotation marks and citation omitted).]

Expert testimony is required to establish a standard of care. See *id*. at 421 (concerning dental malpractice).

A disciplinary subcommittee may also proceed if it finds "[a] violation . . . of this article or a rule promulgated under this article." MCL 333.16221(h). Regarding documentation, the Public Health Code provides that

> [a]n individual licensed under this article shall keep and maintain a record for each patient for whom he or she has provided medical services, including a full

and complete record of tests and examinations performed, observations made, and treatments provided. [MCL 333.16213.]

The general dentistry rules provide the specific requirements for a dentist's maintenance of dental records, which should include the following:

(a) Medical and dental history.

(b) The patient's existing oral health care status and the results of any diagnostic aids used.

(c) Diagnosis and treatment plan.

(d) Dental procedures performed upon the patient, that specify both of the following:

(i) The date the procedure was performed.

(ii) Identity of the dentist or dental auxiliary performing each procedure.

(e) Progress notes that include a chronology of the patient's progress throughout the course of all treatment.

(f) The date, dosage, and amount of any medication or drug prescribed, dispensed, or administered to the patient.

(g) Radiographs taken in the course of treatment. . . . [Mich Admin Code, R 338.11120(2).]

First, Dr. Schwarcz contends that the Disciplinary Subcommittee erred by finding that he did not document the separated file because it was apparent from the patient's x-ray. We reject this argument.

In this case, Dr. Leonard testified that a dentist should enter into the patient's file the "date of service, what service was performed, testing that was done . . . x-rays that were taken, a diagnosis, a treatment plan, if there's to be further work done, prescriptions that were written or medications that were dispensed—medications that would be administered, also and a signature." According to Dr. Leonard, if an instrument fractures during a root canal, a dentist should make a note in the patient's chart that "the notation that, look this instrument is fractured, it may be an issue, it may not be an issue."

Dr. Borlas testified that Dr. Schwarcz did not have a chart entry saying that a piece of file broke off in the tooth. But Dr. Borlas opined that the broken file was documented because Dr. Schwarcz took a post-operative x-ray that clearly showed the broken file fragment, and the x-ray is part of the patient's record.

We conclude that substantial evidence supports the Disciplinary Subcommittee's finding that Dr. Schwarcz did not sufficiently chart the broken file complication. Dr. Leonard testified

that when a file factures, the dentist should note that the instrument is fractured in the patient's chart. Therefore, the evidence supported the Disciplinary Subcommittee's finding that the standard of care required Dr. Schwarcz to make a notion in the patient's chart, rather than merely relying on the existence of an x-ray showing a broken file fragment. Though Dr. Borlas provided testimony to the contrary, it is not the province of this Court to re-weigh the evidence. A reasonable person could rely on Dr. Leonard's testimony to conclude that Dr. Schwarcz should have noted the complication in the patient's chart instead of simply taking an x-ray. We conclude that sufficient facts supported the Disciplinary Subcommittee's conclusion that Dr. Schwarcz did not adequately document the fractured file.

Second, Dr. Schwarcz also contends that substantial evidence did not support the Disciplinary Subcommittee's finding that he was required to note in his chart that he informed the patient about the broken file fragment. We also reject this argument.

According to Dr. Leonard, the standard of care includes putting patient instructions into the chart, including post-operative and follow-up instructions. The dentist does not need to rewrite all of the information but should indicate that they have given it to the patient. Dr. Leonard opined that Dr. Schwarcz's records were insufficiently detailed. They generally lacked details about examinations, observation, what was done, and symptomology. Dr. Schwarcz did not note whether the patient was advised of the broken file. Dr. Leonard opined that this conduct violated the standard of care and constituted incompetence.

Dr. Borlas testified that he does not believe that failing to put a note in the chart about a patient conversation violates the standard of care. However, Dr. Borlas also testified that most dentists would make a notation about telling a patient about a broken file, if only for their own protection. And Dr. Schwarcz agreed that he had testified at his deposition that the standard of care required him to note the conversation in his chart, and he did not have a good answer for why he did not note the conversation. On redirect examination, Dr. Schwarcz explained that when he gave that answer, he did not have the complete chart with him. Dr. Schwarcz believed that the x-rays documented his conversation with the patient.

We conclude that substantial evidence supported the Disciplinary Subcommittee's finding that Dr. Schwarcz's failure to note his conversation with the patient in the chart violated the standard of care. In this case, Dr. Leonard testified that Dr. Schwarcz's failure to note that he told the patient about the complication constituted a breach of the standard of care. Dr. Borlas also testified that most dentists would make a note about telling the patient about the separated file, which also established what a reasonably competent practitioner would have done under the circumstances. Finally, Dr. Schwarcz admitted that he testified at a deposition that the standard of care required him to note his conversation with the patient in the chart, and he did not know why he did not note it. The Disciplinary Subcommittee apparently chose to discredit his explanation for his statement, calling it "self-serving." This Court is not in the position to contradict the Disciplinary Subcommittee's credibility determination. See *Dep't of Community Health*, 274 Mich App at 372.

Overall, the testimonies of Dr. Leonard, Dr. Borlas, and Dr. Schwarcz provided evidence from which a reasonable person could find that the standard of care required Dr. Schwarcz to

note his conversation about the broken file with the patient in her chart. We conclude that sufficient evidence supported the Disciplinary Subcommittee's findings.

## V. ADDITIONAL ARGUMENTS

Dr. Schwarcz makes two additional arguments. First, Dr. Schwarcz contends that the record does not support the Disciplinary Subcommittee's finding that the patient saw Dr. Shoha because of pain in tooth #19. Dr. Schwarcz is correct, but he is not entitled to relief on this basis.

Dr. Shoha testified that Dr. Hubbard referred the patient for work on tooth #20. Dr. Hubbard did not mention any problems with tooth #19. Therefore, Dr. Schwarcz is correct that the Disciplinary Subcommittee's finding that the tooth involved in the referral was tooth #19, not tooth #20, is correct.

However, Dr. Schwarcz does not explain how this fact entitles him to relief. This Court will not modify a decision of the trial court on the basis of a harmless error. MCR 2.613(A). The trial court's error is harmless if it is not decisive to the outcome in a case. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 529; 730 NW2d 481 (2007). The Disciplinary Subcommittee based its discipline on Dr. Schwarcz's failure to tell the patient about the file and his deficient documentation. The Disciplinary Subcommittee's mistake or typographical error did not have any bearing on the findings that supported its conclusions. Therefore, it was not decisive to the outcome of this case, and Dr. Schwarcz is not entitled to relief.

Second, Dr. Schwarcz contends that he was improperly disciplined because his conduct during and after the root canal did not violate any statutes or rules. Again, we conclude that he is not entitled to relief.

Dr. Schwarcz's conduct during the root canal and his subsequent treatment of the file fragment did not form the basis of the Disciplinary Subcommittee's decision. This Court need not consider issues that do not form the basis of the decision on appeal. See *Derderian v Genesys Health Care Systems*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

In this case, the magistrate concluded that Dr. Schwarcz's root canal and subsequent treatment of the patient complied with the dental standards of care. The Disciplinary Subcommittee adopted these findings, but based its decision on Dr. Schwarcz's failure to inform the patient of the separated file and his failure to keep adequate patient records. Whether Dr. Schwarcz properly performed the root canal or properly treated the patient afterward did not form the basis of its decision to discipline him. Therefore, we decline to review these issues because the Disciplinary Subcommittee decided them in Dr. Schwarcz's favor.

We affirm.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell